IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROMARIS WALTON,<br><br>     Plaintiff,<br><br>v.<br><br>DR. MARK LITHERLAND,<br>DEEDEE BROOKHART, and<br>MARY WEAVER,<br><br>     Defendants. | Case No. 3:21-cv-123-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Romaris Walton ("Walton") was an inmate at Lawrence Correctional Center ("Lawrence") within the Illinois Department of Corrections ("IDOC") when he saw Defendant Dr. Mark Litherland for tooth pain. Dr. Litherland confirmed Walton had a cavity and said he would be called back in two weeks for a filling. Instead, Walton was not called back for more than two months, and, at that point, the tooth was beyond saving.

Walton subsequently filed this lawsuit pursuant to 42 U.S.C. § 1983. (Doc. 1). Walton is now proceeding on the First Amended Complaint, in which he alleges deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the U.S. Constitution. (Doc. 11). He claims Dr. Litherland delayed his filling, ultimately requiring the tooth to be extracted via oral surgery. (*Id.*). He also asserts that Defendants Mary Weaver, a correctional officer, and DeeDee Brookhart, the Warden of Lawrence,

failed to provide his prescription pain medication while he was housed in segregation.

Defendants now move for summary judgment. (Docs. 48, 51). For the reasons set forth below, Defendants' motions are granted.

## BACKGROUND

Walton first saw Dr. Litherland, a dentist at Lawrence Correctional Center, for sensitivity in tooth #6 and #30 on August 28, 2019. (Doc. 49-1 at ¶ 5). Dr. Litherland noted that tooth #6 had possible decay and that #30 was possibly cracked. (*Id.*). He ordered a full set of x-rays and told Walton he would reevaluate after the x-rays came back. (*Id.*). Walton had the x-rays a week later, and Dr. Litherland saw Walton for a follow-up visit on September 18, 2019. (*Id.* at ¶¶ 6-7). Dr. Litherland explained that tooth #6 had distal caries, but he thought the tooth could be filled. (*Id.* at ¶ 7). Therefore, he placed Walton on the restorative filling list. (*Id.*). Dr. Litherland told Walton that he would be called back in two weeks for the filling. (Doc. 49-2 at pp. 22-23).

Two months went by with no word about the filling. Walton saw Dr. Tran, who is not a party to this action, on November 25, 2019. (Doc. 49-1 at ¶ 8). At that time, Dr. Litherland handled extractions while Dr. Tran handled most of the fillings. (*Id.*). Dr. Tran examined Walton, found the decay was "extensive to nerve," determined that the #6 tooth was nonrepairable, and put him on the list for an extraction. (*Id.*; Doc. 57 at p. 16).

The following day, Walton filed an emergency grievance stating that he was told he needed a filling, that for some reason he was not called back to the dentist until November, 25, 2019, and that Dr. Tran tried to encourage him to have the tooth pulled because, in Walton's words, that would be the easy way to deal with the issue. (Doc. 57

at pp. 12-13). Walton further stated that he believed his tooth could "still be saved because there is no pain or infection at this point along with the fact that the tooth is still strong and stable in my mouth." (*Id.*). Walton alleged that Dr. Litherland intentionally did not call him back to dental in a timely manner. (*Id.*).

The Grievance Officer investigating the grievance sent an email inquiring about Walton's claims. (Doc. 57 at p. 26). In response, an IDOC employee indicated that Dr. Litherland placed Walton on the filling list in September 2019 but the wait time pushed Walton's appointment with Dr. Tran to November 2019. (Doc. 57 at p. 26). On December 3, 2019, Warden Brookhart reviewed Walton's grievance and deemed it a non-emergency. (Doc. 52-2 at p. 11). Walton appealed the grievance to the Administrative Review Board, which determined that Walton's claim of a deliberate delay in dental care was not substantiated. (Doc. 52-2 at p. 9).

On December 4, 2019, Dr. Litherland saw Walton and again explained that, due to the location of the subgingival carious lesion in the #6 tooth, it would be very difficult to repair the tooth with a filling. (Doc. 49-1 at ¶ 9). He further explained that, even if he attempted to fill the tooth, the filling could fail because the cavity was in the root and not on the surface of the tooth. (*Id.*). Dr. Litherland warned that one risk of the procedure was hitting the nerve while trying to clean out the cavity—if the cavity was not already in the nerve. (*Id.*). Still, Walton refused to have his tooth extracted. (*Id.*).

Walton was next scheduled to see Dr. Litherland on December 20, 2019, but this appointment was cancelled due to lack of time in the schedule. (Doc. 49-2, p. 28). On January 2, 2020, Dr. Litherland saw Walton and ordered another set of x-rays at a different

angle to determine whether there was another option aside from extraction. (Doc. 49-1 at ¶ 10). The x-ray results showed a lesion extending into Walton's bone structure and a pupal infection. (*Id.* at ¶ 11). Dr. Litherland advised Walton to have the tooth extracted to prevent further complications such as a tooth fracture, pulpal infection, or spread of decay to other teeth. (*Id.*). Walton refused the extraction and left the office. (*Id.*).

Walton filed another grievance related to his dental care on January 9, 2020. (Doc. 52-2 at pp. 7-8). This grievance was determined to be a duplicate of Walton's grievance dated November 26, 2019. (*Id.* at p. 6).

On January 29, 2020, Dr. Litherland requested that Walton be brought back to his office. (Doc. 49-1 at ¶ 12). Dr. Litherland advised Walton that, due to the condition of tooth #6, he would refer Walton to an oral surgeon to have the tooth extracted. (*Id.*). The extraction was scheduled for March 9, 2020. (*Id.* at ¶ 14).

On February 23, 2020, prior to Walton's oral surgery, he was moved to segregation. (Doc. 49-2 at pp. 43-45). Walton was at work when his belongings in his general population cell were packed up. (*Id.*). Certain items cannot be brought to segregation, including any medication in an inmate's possession. (*Id.* at p. 46). Instead, medication should be taken to health care for distribution by a nurse to the inmate in segregation. (*Id.* at pp. 46-48). Walton, however, did not receive his prescribed medication including ibuprofen and Tylenol. (*Id.* at pp. 48-49). Walton explained that if his medication was packed up in his property box rather than taken to health care, the health care staff would not know to distribute it to him. (*Id.*).

On February 25, 2020, Walton wrote another grievance, marked as an emergency,

regarding the delay in treatment for his tooth. (Doc. 52-2 at p. 3). He stated that he had been suffering extreme pain for over five months, and the tooth was past the point of needing to be pulled. (*Id.*). This grievance was deemed an emergency by Warden Brookhart and handled in an expedited manner, but eventually was denied as moot after Walton's issues were addressed. (*Id.* at p. 1).

Within 72 hours of Walton entering segregation, Warden Brookhart came to talk to him. (Doc. 49-2 at p. 49). Walton had begun a hunger strike to protest his placement in segregation. (*Id.* at p. 50). While Warden Brookhart was at Walton's cell to discuss the hunger strike, Walton mentioned that he was not receiving his medications and that his tooth was causing pain. (*Id.*). Walton then began receiving his medication from the nursing staff around February 26 or 27, 2020. (*Id.*).

Walton also filed an emergency grievance on February 28, 2020, asserting that all Internal Affairs staff, including Warden Brookhart and Defendant Weaver, knowingly chose not to bring him his pain medications including ibuprofen and Tylenol. (Doc. 1-5 at pp. 2-3). And, without his medication, he was suffering pain every day. (*Id.*). In response to the grievance, Warden Brookhart stated that Walton was allowed to have his prescribed medication administered by nursing staff while he was in segregation, but he could not have it in his cell. (*Id.* at p. 2). Defendant Weaver's response stated that Walton's "property was not inventoried by IA staff per protocol." (*Id.*). Walton believes that other inmates working as porters were instructed to pack up his property and that it was Weaver who did not properly inventory his medication and transfer it to the Health Care Unit for distribution. (Doc. 49-2 at pp. 46-47). Walton bases this belief off of a conversation

he had with the head of Internal Affairs. (*Id.*). Walton's Segregation Property Inventory sheet, however, states that Walton's property was inventoried by another officer—not Weaver. (Doc. 52-6).

On March 2, 2020, Walton was released from segregation. That same day, Dr. Litherland prescribed Augmentin 875 mg (one tablet for seven days) and ibuprofen 800 mg (one tablet twice a day for seven days) to prevent infection before Walton's tooth was extracted. (Doc. 49-1 at ¶ 13). Walton's tooth was extracted at an outside facility on March 9, 2020. (Doc. 49-1 at ¶ 14). Dr. Litherland examined Walton three days post-surgical extraction, prescribed amoxicillin and Motrin, and found that Walton was doing well. (*Id.*; Doc. 49-2 at p. 30).

## LEGAL STANDARD

Summary judgment is proper if the movant shows that no material facts are in genuine dispute and the movant is entitled to judgment as a matter of law. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing FED. R. CIV. P. 56(a)). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

Once the moving party sets forth the basis for summary judgment, the burden

shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

## DISCUSSION

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately, that is subjectively, indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019).

A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (citation omitted). It is not necessary for a condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to

a *substantial* risk of *serious* harm") (internal quotation marks omitted) (emphasis added).

Here, Defendants do not argue that Walton lacked a serious medical condition. Thus, for the purposes of summary judgment, the Court considers the first prong of the deliberate indifference standard to be met. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Board v. Farnham*, 395 F.3d 469, 480-81 (7th Cir. 2005) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection.").

Prevailing on the second prong requires a plaintiff to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual knew of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, at 409 (7th Cir. 2014). The defendant must have had "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, 724 F. App'x 470, 474 (7th Cir. 2018). Proving deliberate indifference "is a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)).

A. **Dr. Litherland**

Dr. Litherland spends the majority of his brief arguing that he was not deliberately indifferent because he tried to explain the challenges in filling tooth #6 to Walton, but

Walton refused to follow his medical advice and receive the recommended treatment. Dr. Litherland asserts he went above and beyond to find a solution Walton would be happy with despite the difficult position of the cavity, and that Walton had no constitutional right to demand a specific course of treatment. Only one paragraph of Dr. Litherland's argument addresses the true issue: whether any delay by Dr. Litherland caused Walton's tooth, which Dr. Litherland originally assessed as fillable, to deteriorate and become nonrepairable. Even then, Dr. Litherland summarily states there is no evidence in the record to demonstrate that he caused a delay that exacerbated Walton's injury.

For his part, Walton points to his dental records as evidence that Dr. Litherland knew he had tooth decay as early as August 28, 2019, and that x-rays conducted in September 2019 confirmed he had a cavity. Walton testified that on September 18, 2019, Dr. Litherland told him he would be scheduled to have a filling in two weeks. Instead, Walton waited more than two months to be called back to the dentist. Walton also testified that he experienced pain in tooth #6 while he waited those two months and that he developed an infection. (Doc. 49-2 at p. 32).

An "inexplicable delay in treatment" that serves no penological interest can support an inference of deliberate indifference, particularly if the delay exacerbates injury or unnecessarily prolongs an inmate's pain. *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). "Of course, delays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

Here, no reasonable jury would conclude that Dr. Litherland was deliberately indifferent to Walton's dental needs when he identified that Walton had a cavity in tooth #6 and placed him on the waiting list for a restorative filling. *See Earl v. Kinziger*, No. 20-CV-617-PP, 2023 WL 7112272, at *12 (E.D. Wis. Oct. 27, 2023) ("A reasonable jury could not conclude that [the dentist] was deliberately indifferent to the plaintiff's dental condition when he placed the plaintiff on the routine waitlist."). Although Dr. Litherland told Walton that the wait for a filling would be two weeks, when it was actually two months, there is no evidence that Dr. Litherland intentionally misled Walton, caused the wait to be longer, or recklessly disregarded a serious risk to Walton's health.

There also is no evidence that Dr. Litherland knew Walton was suffering from severe pain between September 18, 2019, and November, 25, 2019—or that Walton actually was suffering from severe pain. Walton had been given ibuprofen and Tylenol for pain relief, and he did not file any grievances while waiting for the filling that would have alerted Dr. Litherland to his continued pain. *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) ("A dentist demonstrates deliberate indifference by failing to treat the patient promptly, thus prolonging the patient's pain, while *knowing* that the patient may well be in serious pain that is treatable.") (emphasis added). Indeed, in Walton's November 26, 2019 grievance, he stated that he believed his tooth could "still be saved because there is no pain or infection at this point . . . ." (Doc. 57 at p. 12).

Because there is no evidence from which a jury could conclude that Dr. Litherland knowingly disregarded an excessive risk to Walton's health, he is entitled to summary judgment.

B.      **Warden Brookhart**

Walton first alleges Warden Brookhart was deliberately indifferent to his serious medical needs because she contributed to the delay in receiving treatment for his tooth. Walton claims he sent Brookhart grievances, but she did nothing to ensure treatment was provided by her subordinates. At his deposition, Walton acknowledged:

> Besides not following up on making sure that the people whose job it was to deal with my dental situation [did their jobs], I can't actually point the finger at her. But if I work for you and you realize what I'm putting somebody through and you don't do nothing, to me, in my opinion, you just as guilty as the person that you allowed to mistreat people because it's your job to make sure my rights are protected. That's your job.

(Doc. 52-1 at p. 14).

The Court agrees with Defendants that Warden Brookhart is entitled to summary judgment because she had no personal involvement in Walton's medical care. A plaintiff must establish that each defendant was "personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). This means a plaintiff must demonstrate that the defendant, through his or her own conduct, violated the Constitution. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

Here, Warden Brookhart had no authority to order treatment for any offender, nor could she order medical examinations or tests. (Doc. 56). She is not a physician, nor is she trained or licensed to prescribe medication or a particular course of treatment. (*Id.*). Warden Brookhart also could not overrule the medical decisions of the doctors and dentists at Lawrence. (*Id.*). Furthermore, to the extent Walton claims Warden Brookhart

was deliberately indifferent because her staff did not provide appropriate care, Warden Brookhart is entitled to summary judgment because *respondeat superior*, or supervisory liability, is not recognized under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

As to Walton's claim that Brookhart knowingly chose not to give him his pain medication while he was in segregation, the evidence is that he entered segregation on February 23, 2020, he wrote a grievance related to his dental treatment on February 25, 2020, he spoke with Warden Brookhart within 72 hours of entering segregation, and by February 26 or 27 he began receiving his medication. There also is no evidence whatsoever that Warden Brookhart personally inventoried Walton's belongings or that she failed to act once she became aware that Walton was not receiving his medication.

Based on this evidence, no reasonable jury could find that Brookhart knew Walton was not receiving his medication and deliberately disregarded that fact. Accordingly, Warden Brookhart is entitled to summary judgment.

### C. Officer Weaver

Walton next claims Officer Weaver was deliberately indifferent when she packed up his belongings in general population and did not inventory his medications, thereby causing him to go without his pain medication for several days. Walton avers that Officer Weaver's failure to inventory his medication caused him to suffer both physically and psychologically.

The evidence does not support Walton's claim. Even if the failure to properly inventory an inmate's belongings could constitute deliberate indifference—and Walton

has provided no authority that it can—there is no evidence that Officer Weaver actually inventoried Walton's belongings. Walton testified that he believed Officer Weaver inventoried his property because he wrote a grievance and when it came back, Lieutenant Oaks, the head of Internal Affairs, said Weaver was the one that packed up his property. (Doc. 49-2 at p. 47). But this evidence is hearsay, and it cannot be considered on summary judgment. *Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023) (a district court may not consider inadmissible hearsay as summary judgment evidence).

What remains in the record, then, is Weaver's affidavit in which she attests that her signature is not on Walton's "Segregation Property Inventory" dated February 24, 2020 (Doc. 52-3), as well as the Inventory sheet itself (Doc. 52-6). The Inventory sheet contains Walton's signature and Officer Wagner's signature. (*Id.*). It also states that the property was "Inventoried By: Sutton 12423." (*Id.*). Accordingly, there is no evidence that Officer Weaver inventoried Walton's property or had any personal involvement in the failure to send his medications to the health care unit. Even if such evidence existed, there is no indication that the actions constituted anything more than a mistake or negligence—far below the high bar required to succeed on a deliberate indifference claim. Officer Weaver is also entitled to summary judgment.

## CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendant Dr. Mark Litherland (Doc. 48) is **GRANTED**.

The Motion for Summary Judgment filed by Defendants DeeDee Brookhart and Mary Weaver (Doc. 51) is also **GRANTED**.

Plaintiff Romaris Walton shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED:  March 4, 2024

_Nancy J. Rosenstengel_

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**
